IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| BIG CAT RESCUE CORP.,<br>a Florida not for profit corporation,<br><br>    Plaintiff,<br><br>vs.<br><br>BIG CAT RESCUE ENTERTAINMENT<br>GROUP, INC., et al.,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)  CASE NO. 8:11-cv-02014-JDW-TBM<br>)<br>)<br>)<br>)<br>)<br>) |

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff, Big Cat Rescue Corp. ("BCR"), by and through its undersigned counsel, pursuant to Rule 56, Fed. R. Civ. P., moves for entry of a summary judgment against Defendants BIG CAT RESCUE ENTERTAINMENT GROUP, INC. ("BCRE"); G.W. EXOTIC ANIMAL MEMORIAL FOUNDATION d/b/a Big Cat Rescue Entertainment Group ("G.W. Exotic"); and JOE SCHREIBVOGEL a/k/a Joe Exotic a/k/a Aarron Alex a/k/a Cody Ryan ("Schreibvogel") (BCRE, G.W. Exotic, and Schreibvogel all collectively "Defendants") on BCR's Supplemental Amended Complaint (Docs. 32-33) ("SAC"), as set forth in the following Memorandum.

## MEMORANDUM

### I.   INTRODUCTION

This lawsuit concerns Defendants' unauthorized use of BCR's copyrighted material on the Internet. BCR's copyrighted material is a photograph of three BCR volunteers holding frozen rabbits[1] to be distributed to the volunteers' favorite animals at BCR's animal sanctuary;

---

[1]    The pictured rabbits arrived at BCR's facility frozen, as with any other type of frozen meat; BCR did not kill the pictured rabbits. (Transcript from Deposition of Carole Baskin, attached as Exhibit (hereinafter "Ex.") A, at 26:19-25).

the photograph was taken by BCR's volunteer, Julie Hanan, who subsequently assigned ownership of the photograph to BCR (hereinafter, BCR's "copyrighted material"). (Ex. A at 22:1-23:16; SAC, Exs. 2-3 (Doc. 32, Exs. 2-3)). BCR's copyrighted material is registered with the United States Copyright Office, registration number VA1-788-273, with an effective registration date of August 25, 2011. (SAC, Exs. 2-3 (Doc. 32, Exs. 2-3)).

In 2011, Defendants obtained BCR's copyrighted material and began using it all over the Internet, misrepresenting what the photograph portrays in a calculated effort to injure BCR's reputation.[2]   Defendants have systematically continued uploading infringing content[3], by establishing new user profiles with Internet content providers in order to enable Defendants to evade BCR's "takedown" notices.

Throughout this litigation, Defendants have been evasive regarding the locations of their infringing content, forcing BCR to scour the Internet and expend countless hours policing.[4]  BCR – with no cooperation from Defendants – has discovered every single infringing use by Defendants of BCR's copyrighted material discussed in this Motion for Summary Judgment ("Motion"); BCR has no way to know if it has uncovered every single infringing use. (Declaration of Howard Baskin, attached as Ex. C at ¶¶8-38).  Despite the filing of this lawsuit,

---

[2]     Schreibvogel, on behalf of Defendants, testified that he used the photograph to advocate against killing domesticated rabbits. (Transcript from Schreibvogel Deposition on behalf of all Defendants, attached as Ex. B, at 55:21-24; 91:12-92:9; & 100:19-101:8). As demonstrated in Defendants' infringing content, Defendants' use is premised on Defendants' incorrect assertion that BCR killed the rabbits pictured in the copyrighted material, which belies Defendants' purported advocacy efforts. Defendants' assertion that BCR killed the rabbits pictured in BCR's copyrighted material is false. (Ex. A at 26:10-25).

[3]     "Infringing content," "infringing video(s)," or "infringing use(s)" refer to Defendants' unauthorized use of BCR's copyrighted material.

[4]     BCR expended significant effort in an attempt to have Defendants reveal the locations of their infringing content. First, in December, 2011, BCR's counsel attempted to obtain Defendants' consent to a preliminary injunction; Defendants refused, claiming they had not used BCR's copyrighted material after the filing of this lawsuit, ignoring BCR's documentation to the contrary. Next, BCR served Defendants with interrogatories regarding the locations of Defendants' infringing content. (Doc. 11, Ex. 1). Defendants responded, under oath, that they had not used BCR's copyrighted material since August 25, 2011, which, as discussed below and admitted by Defendants, is patently false. (Doc. 12 & Doc. 12, Exhibits 1-2; see, e.g., Ex. B at 40:3-8 & 41:21-23). Defendants' supplemental interrogatory responses identified only four uses of BCR's copyrighted material, all between March, 2011 and May, 2011. (Doc. 14, Exhibit 1). Defendants' deposition testimony, their responses to BCR's request for admissions, and the evidence examined below all contradict Defendants' interrogatory responses.

Defendants have continued using BCR's copyrighted material, as recently as August 29, 2012, nearly a year after BCR filed this lawsuit, and infringing content has been available as late as October 2, 2012. *See*, Ex. C at ¶41; September 5, 2012 Declaration of Pamela S. Shaffer, attached as Ex. D.   Defendants' hide the ball approach – refusing to identify infringing uses, failing to admit to infringing uses when identified by BCR, and establishing alternate Internet user names to continue uploading infringing content – belies any purported "fair use" advocacy efforts and demonstrates Defendants' intent to willfully infringe BCR's copyright.

The escalation of this lawsuit – in fact, the existence of this lawsuit at all – is entirely a product of Defendants' conscious choices.   BCR initiated this lawsuit to prevent Defendants' continued use of BCR's copyrighted material.   After BCR submitted a takedown notice to the Internet content provider known as "YouTube" (website available at http://www.youtube.com; hereinafter "YouTube") under the Digital Millennium Copyright Act, 17 U.S.C. §512 ("DMCA")[5], relating to Defendants' infringing content, rather than allow the infringing content to be removed, Defendants responded by submitting a false counter-notification.   At that point, YouTube informed BCR that the infringing content would be restored unless BCR filed suit. After the filing of this lawsuit, as discussed above, BCR's counsel attempted to obtain Defendants' consent to an injunction preventing the continued use of BCR's copyrighted material, but Defendants refused, obviously desiring to continue using BCR's copyrighted material.   Defendants continued using the copyrighted material throughout this litigation, as recently as late August, 2012, forcing BCR to vigilantly police the Internet for Defendants' infringing content and diligently submit DMCA takedown notices.   Defendants obviously do not

---

[5]     The DMCA establishes a procedure by which a copyright owner can notify an Internet content provider of copyright infringement by an Internet content provider's user.   After a copyright owner submits a DMCA takedown notice, the infringing user can either allow the Internet content provider to remove the infringing content or submit a counter-notification stating that the content was incorrectly removed due to some mistake or misidentification of the infringing content.   If an alleged infringer submits a counter-notification, the Internet content provider will restore the infringing content unless the copyright owner files suit to enforce its rights.

respect BCR's copyright or the ramifications of this lawsuit.  As a result, in light of the evidence examined below, this Court should enter a summary judgment against Defendants for their willful copyright infringement to stop their current and future infringement.[6]

## II.  **STATEMENT OF UNDISPUTED FACTS**

The parties hold diametrically opposed viewpoints with respect to key animal care issues. BCR operates an animal sanctuary in Tampa, Florida, which cares for undomesticated, large felines and advocates against inhumane practices, such as the breeding, petting, and exhibition of such animals.  (Ex. A at 6:6-7; Ex. C at ¶3).  Defendants operate an animal facility in Wynnewood, Oklahoma which breeds undomesticated, large felines and takes them on traveling animal exhibitions at which the public can pet and interact with the animals for a fee. Schreibvogel is the principal of G.W. Exotic and BCRE.  (Ex. B at 7:6-17 & 9:9-15).

Based on Defendants' responses to BCR's First and Second Requests for Admissions[7], the following material facts are not disputed:

- Defendants were responsible for the user name "gwbigcatdaddy" on YouTube, through which Defendants (1) uploaded an infringing video on August 22, 2011, available at http://www.youtube.com/watch?v=4j07xiU_zss, entitled "Carole Baskin Saga 39" which incorporated BCR's copyrighted material; (2) uploaded an infringing video on August 23, 2011, available at http://www.youtube.com/watch?MFavfrgWMkY, entitled "Save the rabbits from BCR," which incorporated BCR's copyrighted material; and (3) submitted two counter-notifications to BCR's DMCA takedown notices (which turned out to be false) relating to these infringing videos. (Ex. F, Responses 1, 3, 4, 36, & 38-39; Ex. G, Response 5).

---

[6]      Not only do Defendants use BCR's copyrighted material which is the subject of this lawsuit, but they also use other copyrighted content from BCR's websites.  (Ex. C at ¶¶42-43).  As recently as October 8, 2012, Defendants have submitted false DMCA counter-notifications relating to copyrighted content not the subject of this lawsuit.  *Id.*  As a result, unless BCR can obtain an injunction enjoining Defendants from using copyrighted content from BCR's website – including the copyrighted material which is the subject of this suit – BCR will be forced to sue Defendants again.  This Court should employ the remedies available to it – statutory damages, prevailing party attorneys' fees and costs, and an injunction – to prohibit Defendants' future copyright infringement.

[7]      BCR served Defendants with its First Request for Admissions on April 10, 2012.  *See*, Ex. E. Defendants responded to BCR's First Request for Admissions, but due to various issues identified by BCR, Defendants agreed to amend all of their responses.  *See*, Ex. F.  Defendants subsequently amended their responses two more times based on issues identified by BCR which had not been corrected by Defendants' first amendment.  *See*, Composite Ex. G.  Defendants' response to BCR's Second Request for Admissions is attached as Ex. H.

- Defendants are responsible for the "Joe Exotic Fan Page" on the website known as "Facebook" (available at http://www.facebook.com; hereinafter "Facebook"), through which Defendants uploaded infringing content on September 13, 2011. (Ex. G, Response 6).

- On or about September 28, 2011, Defendants uploaded infringing content on the following websites all collectively referred to as "Wordpress": http://carole1baskin.wordpress.com; http://carole1baskin.wordpress.com/bcr-staff/; http://carole1baskin.wordpress.com/the-truth; http://carole1baskin.files.wordpress.com/2011/09/bcr-rabbit-blog.jpg; http://carole1baskin.wordpress.com/double-standards; and http://carole1baskin.files.wordpress.com/2011/09/orig-14287431.jpg. (Ex. G, Responses 8, 61, 64, 67 & 70). Defendants received DMCA takedown notices relating to the content available on the following websites: http://carole1baskin.wordpress.com; http://carole1baskin.files.wordpress.com/2011/09/bcr-rabbit-blog.jpg; http://carole1baskin.wordpress.com/double-standards; and http://carole1baskin.files.wordpress.com/2011/09/orig-14287431.jpg. (Ex. F, Responses 10, 63, 66, 69, & 72).

- In October, 2011, Defendants' uploaded infringing content on the website available at http://animalsluts.org, for which they received a DMCA takedown notice. (Ex. F, Responses 14 & 16).

- In October, 2011, Defendants also uploaded infringing content on the website available at http://www.911animalabuse.org/big-cat-rescue/bunnies-slaughtered-at-bigcatrescue-fl. (Ex. F, Response 28).

- On or about March 21, 2012, Defendants uploaded infringing content on the website available at http://www.joeexotic.com/staff.html. (Ex. G, Response 34).

- Defendants are responsible for the IP address at 50.30.99.173, from which Defendants uploaded infringing content. (Ex. H, Response 73).

As a result of Defendants' admissions, Defendants should not dispute that they have used BCR's copyrighted material pre-suit and pre-registration, pre-suit and post-registration, and most importantly, post-filing of this lawsuit and post-registration.

## III.   RELEVANT TIMELINE OF DEFENDANTS' COPYRIGHT INFRINGEMENT

### A. Pre-Suit & Pre-Registration

In 2010, Defendants created BCRE and adopted the "Big Cat Rescue Entertainment" name as part of their traveling animal exhibitions. In a separate lawsuit in the United States District Court for the Middle District of Florida (Case No. 8:11-cv-00209-MSS-MAP), in

January, 2011, BCR sued Defendants for the adoption and use of this confusingly similar name. That lawsuit remains pending.

With this backdrop, in 2011, Defendants obtained BCR's copyrighted material and began using it all over the Internet. BCR presently holds a valid, federally registered copyright in its copyrighted material, but even before BCR registered its copyrighted material, it displayed the copyrighted material with notice of BCR's copyright, reserving all rights. (Ex. A at 17:9-10, 27:15-25, & 33:5-13). Despite Defendants' conflicting claims of permission, Defendants never obtained any permission – neither from the photographer nor BCR (nor its agents, employees, volunteers, or anyone in any way affiliated with BCR) – to use BCR's copyrighted material.[8] (Ex. A at 33:5-13).

---

[8]     Early in this litigation, Defendants asserted that they were somehow authorized to use BCR's copyrighted material.  As a result, BCR served Defendants with its First Set of Interrogatories to ascertain the basis of Defendants' purported authorization. (Doc. 11, Ex. 1). After a Motion to Compel (Doc. 11), Supplement to BCR's Motion to Compel (Doc. 12), Order relating to BCR's Motion to Compel (Doc. 13), Motion for Sanctions (Doc. 14), Order imposing sanctions (Doc. 19), three different responses to BCR's interrogatories, and inconsistent deposition testimony, Defendants have asserted five different, inconsistent explanations for the basis of their purported authorization to use BCR's copyrighted material. Defendants have stated that they received permission to use the copyrighted material from (1) the photographer (Doc. 12 & Doc. 12, Exs. 1-2); (2) someone named Rachel Ingram (Doc. 14, Ex. 1); (3) someone named Kaylee (Doc. 16); (4) someone named Amber Williams (Doc. 16); and (5) someone named Ginny Valdalez (Doc. 23), but they provided no information regarding these individuals or how they could have provided Defendants with authorization to use BCR's copyrighted material. Defendants' sworn interrogatory response that they received permission to use the copyrighted material from the photographer was contradicted by Defendants' own deposition testimony. See, e.g., Ex. B at 17:10-18:1, 18:9-19:7, 26:17-27:24, 32:18-35:16, 80:22-82:10, 83:4-8, 83:17-84:14, 92:13-21 & 93:20-23. In deposition, Defendants also contradicted their statements that someone named Rachel Ingram, Kaylee, or Amber Williams provided the purported authorization. See, e.g., Ex. B, at 26:17-27:24; 34:8-16; 80:22-82:10; 83:4-8; 83:17-84:14; & 93:20-23. Apparently sticking with Ginny Valdalez as the source of Defendants' purported authorization, as set forth in Defendants' latest amended response to BCR's First Set of Interrogatories, Defendants have no proof to support their contention that she provided authorization either. This Court ultimately ordered that "[a]s for the interrogatory response [to BCR's interrogatory number 2], it is what it is and the witness is bound by the response[;] [a]bsent a supplemental response and good cause shown for the same, he may offer no other testimony on the matter of his license or authority to use or publish the photograph at issue." (Doc. 26). This circuitous history regarding Defendants' responses to BCR's interrogatories demonstrates that the only defense advanced by Defendants to BCR's claims of infringement was the existence of a license or some authorization to use BCR's copyrighted material, but Defendants have no admissible evidence supporting such a defense. Defendants' witness disclosure (attached as Exhibit I) lists only Schreibvogel, Bobbi Corona (Defendants' former employee), Carole Baskin (BCR's founder and principal), Jeff Kramer (sic) (BCR's employee), Sue Bass (BCR's independent contractor in charge of public relations), and Julie Hanan (a former BCR volunteer and the photographer of the copyrighted material); Defendants have produced no documents, taken no depositions, and listed no trial witnesses which will corroborate Defendants' position that they were in any way authorized to use BCR's copyrighted material.

BCR detected that Defendants' first infringing use of BCR's copyrighted material occurred on May 19, 2011, on the website known as "Facebook" (available at http://www.facebook.com; hereinafter, "Facebook"), with the following comment demonstrating willful infringement: "Carole[9] get use (sic) to seeing this Pic, it is going to be your new accreditation (sic) simbol (sic)." (Ex. C at ¶8). Defendants' statement clearly contradicts any purported mission to advocate on behalf of the rabbits pictured in BCR's copyrighted material. This infringing content was available on Facebook as late as September 5, 2012[10], until BCR issued a DMCA takedown notice and Facebook removed the infringing content. *Id.*

On or about June 27, 2011, Defendants uploaded infringing content on YouTube through their "gwbigcatdaddy" user name entitled "Saga 36 Carole Baskins staff kills animals," which was available at http://www.youtube.com/watch?v=4vfv7jA3rYo until August 22, 2011, as well as the video entitled "Big Cat Rescue Saga 42 part 2 the real truth" which was available at http://www.youtube.com/watch?v=BBKTdFGJcxE&feature=mr_meh&list=PL2931907C82215 AD6&index=3&playnext=0, and "Big Cat Rescue Saga 42 part 3 the real truth," which was available at http://www.youtube.com/watch?v=BBKTdFGJcxE&feature=mr_meh&list=PL2931907C82215 AD6&index=4&playnext=0. (Ex. C at ¶9).

Next, Defendants established the YouTube user name "bigcatbullshit" on August 2, 2011. (Ex. J at ¶¶15 & 17). That same day, Defendants uploaded the video entitled "Big Cat Rescue's Double Standards.wmv," which was available at http://www.youtube.com/watch?v=r8e3rt2S3dA. (Ex. C at ¶10). That video began with the

---

[9] Carole Baskin is BCR's founder and principal. (Ex. A at 6:5).

[10] Obviously the continued existence of Defendants' infringing content as late as last month contradicts Defendants' deposition testimony that they removed all infringing content upon receiving notice of this lawsuit. *See*, Ex. B at 94:8-95:5.

introduction that "Nothing on this video is copyrighted, Anyone who files a complaint is lying." *Id.* BCR issued a DMCA takedown notice relating to this video and YouTube removed it.[11] *Id.*

On August 6, 2011, Defendants established a "Joe Exotic" user name on the website known as "Vimeo" (available at http://www.vimeo.com; hereinafter "Vimeo").[12] (Ex. J at ¶¶10-11). That same day, Defendants uploaded an infringing video entitled "Big Cat Rescue Killing Innocent Bunnies for entertainment," available at http://www.vimeo.com/27377951, as well as an infringing video entitled "Big Cat Rescue and the lies to cover up," available at http://www.vimeo.com/27376397, which was available as late as April 3, 2012. (April 3, 2012 Declaration of Pamela S. Shaffer, attached as Ex. K). BCR issued DMCA takedown notices relating to this infringing content and Vimeo removed it. (Ex. C at ¶11).

Later that month, on August 22, 2011, Defendants began uploading infringing content incorporating BCR's copyrighted material on YouTube through the user name "gwbigcatdaddy." (Ex. G, Response 5; Ex. C at ¶12). By their own admission, on August 22, 2011, Defendants uploaded the infringing video entitled "Carole Baskin Saga 39," which was available at http://www.youtube.com/watch?v=4j07xiU_zss.[13] (Ex. F, Responses 1 & 3). Defendants also admitted that the very next day, they uploaded the infringing video entitled "Save the rabbits

---

[11]     While Defendants deny responsibility for this YouTube user name, deny uploading the infringing video, and deny receiving a DMCA takedown notice relating to the video (Ex. F, Responses 57 & 59-60), in response to a non-party document subpoena, Google, Inc. ("Google"), the owner of YouTube, revealed the identifying information associated with this user name: the zip code is that of Wynnewood, Oklahoma, where Defendants are located; the birthdate is that of Schreibvogel; and the identifying email address matches the name of Schreibvogel's pet monkey for which Schreibvogel maintains a Facebook account. (Declaration of Aleksas A. Barauskas, attached as Ex. I at ¶¶ 15 &17).

[12]     While Defendants deny responsibility for this Vimeo user name, in response to a non-party document subpoena, Vimeo provided information which identified that the associated email was one admitted to be under Defendants' control (*see*, Ex. B at 90:21-25 (Defendants responsible for joe_exotic@yahoo.com)) and the IP address from which infringing content was uploaded (50.30.99.173) was associated with the Internet Service Provider Arbuckle Communications, Inc. ("Arbuckle"). (Ex. J at ¶¶10-11). Arbuckle responded to a non-party document subpoena by identifying that Defendants were responsible for this IP address. *Id.* at ¶¶13-14. Defendants subsequently admitted that they are responsible for this IP address. (Ex. H, Response 73).

[13]     This video featured Schreibvogel stating that "we are going to show you that picture right now," followed by BCR's copyrighted material. (Ex. C at ¶12).

from BCR," which was available at http://www.youtube.com/watch?v=MFavfrgWMky. (*Id.* at Response 36). BCR submitted DMCA takedown notices relating to both of these videos, and Defendants responded by submitting counter-notifications (*Id.* at Responses 4 & 38-39). Defendants' counter-notifications were false because they claimed – under penalty of perjury – that the infringing content was removed due to a mistake or misidentification of the infringing content, even though the infringing content contained BCR's copyrighted material and Defendants had previously allowed infringing content to be removed in response to BCR's prior DMCA takedown notices. YouTube notified BCR that it would restore Defendants' infringing videos unless BCR filed suit. (Ex. C at ¶12). YouTube subsequently terminated Defendants' "gwbigcatdaddy" YouTube user name, forcing Defendants to rely upon alternate YouTube user names or establish a new YouTube user name for Defendants to continue uploading content infringing BCR's copyright on YouTube. (Ex. C at ¶12).

On or about August 23, 2011, Defendants uploaded infringing content on the websites available at http://capwiz.com/gwpark/issues/alert/?alertid=52249501 and http://capwiz.com/gwpark/issues/alert/?alertid=52248511 (both websites collectively "Capwiz").

Prior to filing suit, as was required by YouTube to avoid restoration of the infringing content due to Defendants' false counter-notifications, BCR registered its copyrighted material with the United States Copyright Office on August 25, 2011. (Ex. C at ¶13).

**B.  Pre-Suit & Post-Registration**

After BCR registered its copyrighted material, but before BCR filed suit, Defendants established the user name "Joe Exotic" on the website known as "Liveleak" (available at http://www.liveleak.com; hereinafter "Liveleak") and, on August 26, 2011, they uploaded the infringing video entitled "Big Cat Rescue, living double standards," which was available at

http://www.liveleak.com/view?i=3e71314369215.[14]   (Ex. C at ¶14).   Like Defendants' August 2, 2011, YouTube video uploaded through the "bigcatbullshit" user name, Defendants' Liveleak video began with the introduction that "Nothing on this video is copyrighted, Anyone who files a complaint is lying." *Id.* This infringing content was available as late as April 6, 2012. *Id.* This infringing Liveleak video was uploaded the following day on the website known as "Videos.com" (available at http://www.videos.com; hereinafter "Videos.com"), and was available as late as April 6, 2012. *Id.; see also,* April 9, 2012 Declaration of Pamela S. Shaffer, attached as Ex. L. BCR submitted DMCA takedown notices relating to this infringing content, and Liveleak and Videos.com removed it. (Ex. C at ¶14).

In late August, 2011, Defendants returned to YouTube to upload additional infringing content through the YouTube user name "suebass2011," a name apparently chosen because of the name of BCR's public relations contractor, Susan Bass."[15] On August 28, 2011, Defendants uploaded the infringing video entitled "Just what is Big Cat Rescue," available at http://www.youtube.com/watch?v=a3ThFpdBSC4. On August 31, 2011, Defendants uploaded the infringing video entitled "Big Cat Rescue Animal Lovers.wmv," available at http://www.youtube.com/watch?v=k5YHuWy3--o. BCR submitted DMCA takedown notices regarding both of these infringing videos and YouTube removed them. (Ex. C at ¶15).

---

[14]      While Defendants deny responsibility for this user name and infringing video, Liveleak responded to a non-party document subpoena by providing the IP address from which the infringing content was uploaded: 50.30.99.173. (Ex. J at ¶¶7-9). As discussed above, Arbuckle established and Defendants admitted that Defendants are responsible for this IP address.

[15]      Susan Bass is an independent contractor responsible for BCR's public relations. (Ex. A at 9:19-23). While Defendants denied responsibility for this YouTube user name (Ex. F, Response 40), the information obtained from Google, Inc., which is responsible for YouTube, in response to a non-party document subpoena, contradicts Defendants' denial. The email address associated with this user name is suebass2011@gmail.com and the associated birthdate matches Schreibvogel's birthdate and the information provided for the "bigcatbullshit" YouTube user name. (Ex. J at ¶¶15 & 18). In response to a second non-party document subpoena, Google, Inc. revealed that the secondary email address associated with the suebass2011@gmail.com email address is joe_exotic@yahoo.com, an email address admitted by Defendants to be under their control. (Ex. J at ¶¶19 & 24; Ex. B at 90:21-25).

BCR filed suit against Defendants on September 2, 2011.[16] (Doc. 1).

## C. Post-Filing of Lawsuit & Post-Registration

After BCR sued Defendants, Defendants continued uploading infringing content on YouTube through their "suebass2011" user name. On September 4, 2011, Defendants uploaded the infringing video entitled "Carole Baskin Saga 41 Busted," available at http://www.youtube.com/watch?v=C6r26XPq1Zk. That same day, Defendants uploaded the infringing video entitled "Saga 45 Carole smuggles Bobcat Kittens," available at http://www.youtube.com/suebass2011#p/a/u/2/2aDKFOQZTX8. The following day, Defendants uploaded the infringing video entitled "Carole Baskin Saga 48 The Contract," available at http://www.youtube.com/suebass2011#p/a/u/1/EDPnKDXV4PE. YouTube removed the infringing content in response to BCR's takedown notices. (Ex. C at ¶16).

On or about September 6, 2011, Defendants uploaded a video entitled "Jeff Kramer (sic) of Big Cat Rescue" on YouTube and the website known as "Traditional Circus Life" (available at http://traditionalcircuslife.co.uk; hereinafter "Traditional Circus Life"). (Ex. C at ¶17).

On September 13, 2011, Defendants uploaded infringing content on Facebook through their "Joe Exotic Fan Page." Defendants admitted that they were responsible for this Facebook user name. (Ex. G at Response 6). Facebook removed the infringing content in response to BCR's takedown notice. (Ex. C at ¶18).

On or about September 28, 2011, Defendants created Wordpress websites, and uploaded a series of infringing content on the following Wordpress sites:

> http://carole1baskin.wordpress.com;
> http://carole1baskin.wordpress.com/bcr-staff/;
> http://carole1baskin.wordpress.com/the-truth;

---

[16]     BCR amended its Complaint before Defendants responded. (Doc. 4). Defendants responded by answering the Amended Complaint and asserting various affirmative defenses. (Docs. 8 & 22). BCR subsequently filed its SAC, to which Defendants have failed to respond, and their response deadline has now passed. (Docs. 32-33).

> http://carole1baskin.files.wordpress.com/2011/09/bcr-rabbit-blog.jpg;
> http://carole1baskin.wordpress.com/double-standards; and
> http://carole1baskin.files.wordpress.com/2011/09/orig-14287431.jpg.

and that they received takedown notices relating to the following websites:

> http://carole1baskin.wordpress.com;
> http://carole1baskin.files.wordpress.com/2011/09/bcr-rabbit-blog.jpg;
> http://carole1baskin.wordpress.com/double-standards; and
> http://carole1baskin.files.wordpress.com/2011/09/orig-14287431.jpg.

(Ex. F, Responses 10, 63, 66, 69 & 72; Ex. G, Responses 8, 61, 64, 67 & 70; Ex. C at ¶19).

Defendants created the website available at http://animalsluts.org, and in October, 2011, uploaded infringing content which was removed after BCR submitted a takedown notice. (Ex. C at ¶20; Ex. F, Responses 14 & 16). Defendants also uploaded infringing content on the website known as "Buzznet" (available at http://www.buzznet.com; hereinafter, "Buzznet"), which was available at http://joeexotic.buzznet.com/user/video/4912741/carole-baskin-saga.48-contract/.[17] (Ex. C at ¶21). Defendants also uploaded infringing content on the website available at http://www.911animalabuse.org/big-cat-rescue/bunnies-slaughtered-at-bigcatrescue-fl.[18] (Ex. C at ¶22; Ex. F, Response 28). Also in October, 2011, Defendants uploaded infringing content on the website previously known as "Blogspot" (now known as Blogger, available at http://www.blogspot.com; hereinafter, "Blogspot"), available at http://bigcatrescuelies.blogspot.com/2011/06/subject-23-needless-slaughter-of.html, as late as March 29, 2012.[19] (Ex. C at ¶23).

---

[17]     While Defendants deny responsibility for the "Joe Exotic" user name on Buzznet or the infringing content, their denials are not credible. First, the user name "Joe Exotic" is one frequently employed by Defendants and, specifically, used by Defendants to upload content infringing on BCR's copyright. *See, e.g.,* Ex. G, Response 6. Second, the infringing content was uploaded and available at or about the same time as Defendants uploaded other infringing content. Third, the infringing video is entitled "Carole Baskin Saga 48," and Defendants testified that they made 57 "sagas" about BCR's founder and principal Carole Baskin. (Ex. B at 52:5-7).
[18]     BCR operates the website available at http://911animalabuse.**COM**, while Defendants have created the website available at http://911animalabuse.**ORG**. (Ex. C at ¶4).
[19]     While Defendants deny responsibility for the Blogspot user name or infringing content on Blogspot, in response to a non-party document subpoena, Google, Inc., the operator of Blogspot, identified that the email address

On or about October 4, 2011, Defendants uploaded an infringing video entitled "Jeff Kramer (the bed time story)" on Traditional Circus Life through their "joeexotic" user name[20], as well as on YouTube. (Ex. C at ¶24).

In December, 2011, Defendants uploaded infringing content on Traditional Circus Life through their "joeexotic" and "joeexotic (STAFF)" user names. (Ex. C at ¶25). Defendants uploaded infringing content which was available at http://traditionalcircuslife.co.uk/video/user/joeexotic, as well as an infringing video entitled "Carole Baskin Saga 39 killing innocent (sic) rabbits," available at http://traditionalcircuslife.co.uk/video/video/007SKMN5G1Y3/Carole-Baskin-Saga-39-killing-inocent-rabbits.[21] Defendants posted a link on their Facebook page to the infringing content available on Traditional Circus Life. *Id.*

On December 7, 2011, Defendants' established a new user name on Vimeo: "Joe Schreibvogel." The following day, Defendants uploaded the infringing content available at http://vimeo.com/33346164.[22] (Ex. C at ¶26).

---

associated with this user name and content is suebass2011@gmail.com which, as discussed above, has been linked to Defendants.

[20]    While Defendants denied responsibility for the "joeexotic" user profile on Traditional Circus Life, in asserting their denials in response to BCR's First Request for Admissions, Defendants directed BCR to Defendants' deposition transcript through which Defendants acknowledge that Traditional Circus Life's operator posted infringing content **for** Defendants. (Ex. G, Responses 20, 22 & 24; Ex. B at 37:17-38:6). Moreover, as discussed above, Defendants' denial is not credible based upon Defendants' use of the "Joe Exotic" user name and alias on the Internet.

[21]    While Defendants denied responsibility for the "joeexotic" and "joeexotic (STAFF)" user profiles on Traditional Circus Life, in asserting their denials in response to BCR's First Request for Admissions, Defendants directed BCR to Defendants' deposition transcript through which Defendants acknowledge that Traditional Circus Life's operator posted the infringing content **for** Defendants. (Ex. G, Responses 20, 22 & 24; Ex. B at 37:17-38:6). Moreover, as discussed above, Defendants' denial is not credible based upon Defendants' use of the "Joe Exotic" user name and alias on the Internet. Additionally, Defendants admitted creating and uploading a video entitled "Carole Baskin Saga 39" on YouTube, Defendants admitted responsibility for the "Joe Exotic" Facebook page which featured a link to this infringing content, and Defendants admitted posting a link to the infringing content on Defendants' "Joe Exotic" Facebook page. (Ex. G, Responses 25-26).

[22]    While Defendants denied responsibility for this Vimeo user name or infringing content, in response to a non-party document subpoena, Vimeo confirmed that the associated email address to this user name was one for which Defendants admitted responsibility and the content was uploaded from an IP address confirmed by Arbuckle and admitted by Defendants to be Defendants' responsibility.

In January, 2012, Defendants uploaded infringing content on Blogspot at http://bigcatrescuelies.blogspot.com, which was available as late as April 18, 2012. (Ex. C at ¶27).

On or about March 21, 2012, Defendants uploaded infringing content on the website available at http://www.joeexotic.com/staff.html. (Ex. C at ¶28; Ex. G, Response 34).

On August, 26, 2012, Defendants created the YouTube user name "Bigcatconspeircy," through which they uploaded the infringing video entitled "Big Cat Rescue Kills Bunnies," which was available at http://www.youtube.com/watch?v=AAK7v86QDbU&feature=plcp, the very next day.[23] (Ex. C at ¶¶27-32).

### D. Summary

Below is a summary of the analysis above, demonstrating the relevant timeline of Defendants' copyright infringement:

| DATE | EVENT |
|---|---|
| 1/31/11 | BCR sued Defendants in a separate lawsuit for trademark infringement for Defendants' adoption of a confusingly similar name. |
| 5/19/11 | Defendants uploaded infringing content on Facebook with the following comment demonstrating willful infringement: "Carole get use (sic) to seeing this Pic, it is going to be your new accrediation (sic) simbol (sic)." Infringing content was available as late as 9/5/12. |
| 6/27/11 | Defendants uploaded infringing content on YouTube. |
| 8/2/11 | Defendants uploaded infringing video on YouTube. |
| 8/6/11 | Defendants uploaded two infringing videos on Vimeo. Infringing content was available as late as 4/3/12. |
| 8/22/11 | Defendants uploaded infringing video on YouTube. Defendants submitted false DMCA counter-notification to YouTube. |
| 8/23/11 | Defendants uploaded infringing video on YouTube and infringing content on Capwiz. Defendants submitted false DMCA counter-notification to YouTube. |

---

[23]      Google, Inc.'s response to a non-party document subpoena established that the associated email address with this user name is joeschreibvogel@gmail.com; the email address associated with that email address is one admitted to be under Defendants' control. (Ex. J at ¶¶19 & 21-23).

| | |
|---|---|
| 8/25/11 | Effective Date of Certificate of Copyright Registration |
| 8/26/11 | Defendants uploaded infringing video on Liveleak.  Infringing video was available as late as 4/6/12. |
| 8/27/11 | Defendants' infringing Liveleak video uploaded on Videos.com.  Infringing video was available as late as 4/6/12. |
| 8/28/11 | Defendants uploaded infringing video on YouTube. |
| 8/31/11 | Defendants uploaded infringing video on YouTube. |
| 9/2/11 | BCR sued Defendants in instant suit for copyright infringement. |
| 9/3/11 | Defendants uploaded infringing video on Vimeo.  Infringing video was available on Vimeo as late as 4/3/12. |
| 9/4/11 | Defendants uploaded infringing video on YouTube. |
| 9/5/11 | Defendants uploaded infringing video on YouTube. |
| 9/6/11 | Defendants uploaded infringing content on YouTube and Traditional Circus Life. |
| 9/13/11 | Defendants uploaded infringing content on Facebook. |
| 9/28/11 | Defendants uploaded infringing content on Wordpress. |
| 10/2011 | Defendants uploaded infringing content on Animalsluts.org, Buzznet, 911animalabuse.org, and Blogspot (infringing content was available as late as 3/29/12). |
| 10/4/11 | Defendants uploaded infringing content on Traditional Circus Life and YouTube. |
| 12/2011 | Defendants uploaded infringing content on Traditional Circus Life, with link to content on Facebook. |
| 12/8/11 | Defendants uploaded infringing content on Vimeo.  Infringing content was available as late as 3/29/12. |
| 1/2012 | Defendants uploaded infringing content on Blogspot.  Infringing content was available as late as 4/18/12. |
| 3/21/12 | Defendants uploaded infringing content on Joeexotic.com. |
| 8/27/12 | Defendants uploaded infringing content on YouTube. |

## IV.   LEGAL STANDARD

### A. Summary Judgment Standard

Summary judgment is authorized when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).  A motion for summary judgment may be supported by "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed.R.Civ.P. 56(c)(1)(A).

"The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact." *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).  "The burden then shifts to the non-moving party, who must go beyond the pleadings, and present affirmative evidence to show that a genuine issue of material fact exists." *Id.* (citing *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115-17 (11th Cir. 1993)).

"When faced with a properly supported motion for summary judgment, the party opposing the motion must establish, through the record presented to the court, that it is able to prove evidence sufficient for a jury to return a verdict in its favor." *Human v. City of Cocoa*, 2000 WL 33175455, *3 (M.D. Fla. 2000) (citing *Cohen v. United Am. Bank*, 83 F.3d 1347, 1349 (11th Cir. 1996).  "The basic issue before the court on a motion for summary judgment is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* (citing *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997)).  "The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion;

'the requirement is that there be no *genuine* issue of *material* fact.'" *Latimer v. Roaring Toyz, Inc.*, 2010 WL 3747148, *2 (M.D. Fla. Sept. 21, 2010 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L.E. 2d 202 (1986)) (emphasis in original).

## B.  Elements of a Cause of Action for Copyright Infringement

The elements of a cause of action for copyright infringement are (1) ownership of a valid copyright in the work at issue[24] and (2) defendants' copying of protected elements from the copyrighted work.  *Peter Letterese and Associates, Inc. v. World Institute of Scientology Enterprises, International*, 553 F.3d 1287, 1300 (11th Cir. 2008) (citing *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991) and *Suntrust Bank v. Houghton Mifflin Co.*, 268 F.3d 1257, 1266 (11th Cir. 2001)).  *See also, Total Marketing Technologies, Inc. v. Angel Medflight Worldwide Air Ambulance Services, LLC*, 2012 WL 2912515, *5 (M.D. Fla. July 16, 2012) (citing *Baby Buddies, Inc. v. Toys R Us, Inc.*, 611 F.3d 1308, 1315 (11th Cir. 2010)).

The Court may remedy copyright infringement through injunction (17 U.S.C. §502), by ordering unauthorized copies destroyed (17 U.S.C. §503), by awarding statutory damages (17 U.S.C. §504)[25], and by awarding the prevailing party its costs and attorneys' fees (17 U.S.C. §505).  All of those remedies are appropriate and necessary here.

## C.  Available Defenses for Cause of Action for Copyright Infringement

Because Defendants have admitted using BCR's copyrighted material, Defendants must rely on available defenses.  Defendants have asserted the following defenses: BCR has failed to state a cause of action; BCR is estopped from bringing its action because it has unclean hands;

---

[24]    "A certificate of registration from the United States Copyright Office is prima facie evidence of the copyrightability of a work." *Total Marketing Technologies, Inc. v. Angel Medflight Worldwide Air Ambulance Services, LLC*, 2012 WL 2912515, *5 (M.D. Fla. July 16, 2012) (citing *Utopia Provider Sys., Inc. v. Pro-Med Clinical Sys., LLC*, 596 F.3d 1313, 1319 (11th Cir. 2010)).
[25]    The current range of available statutory damages is between $750 and $30,000 "as the court considers just," and up to $150,000 if the infringement was committed willfully.  17 U.S.C. §504(c)(1)-(2).

fair use; BCR's damages were caused in whole or in part by non-parties BCR has failed to join; and BCR's damages may have been caused by someone beyond Defendants' control.[26]  (Doc. 22).

BCR's purported failure to state a cause of action and failure to join the appropriate parties are not true affirmative defenses and are considered "specific denials." *See, e.g., Leedom Management Group, Inc. v. Perlmutter*, 2012 WL 1883765, *6-7 (M.D. Fla. May 22, 2012). Defendants' claim that BCR has failed to state a cause of action is refuted by the overwhelming evidence – and Defendants' own admissions – that Defendants have copied BCR's copyrighted material. For the same reason, Defendants' claims that BCR's damages were caused by someone other than Defendants or someone under Defendants' control must also fail; BCR is suing Defendants for Defendants' conduct. Accordingly, because BCR can prove the necessary elements of its cause of action and attribute the complained of conduct to Defendants, these specific denials do not apply. Below, BCR examines the remaining affirmative defenses – estoppel due to unclean hands, fair use, and license.[27]

### i.  *Estoppel due to Unclean Hands*

Defendants' unsupported affirmative defense of estoppel due to unclean hands appears to be a combination of the affirmative defenses of estoppel and unclean hands. "In copyright infringement actions, an alleged infringer may assert the defense of estoppel by demonstrating that: (1) the copyright owner knew the facts of the infringement, (2) the copyright owner intended its conduct to be acted upon or the copyright owner acted such that the alleged infringer

---

[26]  Defendants asserted these defenses in response to BCR's Amended Complaint. BCR subsequently filed its SAC, to which Defendants have failed to timely respond. As a result, Defendants have asserted no defenses in response to BCR's SAC.

[27]  While Defendants have not specifically plead the affirmative defense of "license," they have asserted as much in their interrogatory responses. Similarly, Defendants previously asserted the affirmative defense of "estoppel by unclean hands" and "fair use," but have made no mention of those defenses in their interrogatory responses. In an abundance of caution, BCR examines all of these potential affirmative defenses.

has a right to believe it was so intended, (3) the alleged infringer is ignorant of the true facts, and (4) the alleged infringer relies on the copyright owner's conduct to his detriment." *Thornton v. J Jargon Co.*, 580 F.Supp.2d 1261, 1282 (M.D. Fla. 2008) (citing *HGI Assocs., Inc. v. Wetmore Printing Co.*, 427 F.3d 867, 875 (11th Cir. 2005)). No facts or evidence support this defense.

"To prevail on the defense of unclean hands, Defendants must demonstrate that: (1) Plaintiff's alleged wrongdoing is directly related to the claim against which it is asserted; and (2) Defendants were personally injured by Plaintiff's conduct." *Id.* at 1283. (citing *Calloway v. Partners Nat'l Health Plans*, 986 F.2d 446, 450-51 (11th Cir. 1993) & *Mitchell Bros. Film Group v. Cinema Adult Theater*, 604 F.2d 852, 863 (5th Cir. 1979)). "For instance, the defense has been applied when the plaintiff misused the process of the courts by falsifying a court order, by falsifying evidence, or by misrepresenting the scope of his copyright to the court and opposing party, or when the plaintiff obtained information as to the nature of defendant's work through unfair means." *Id.* (citing 3 Nimmer on Copyright, §13.09[B](1991)). No facts or evidence support this defense either, and Defendants have made no allegations as to any alleged wrongdoing by BCR.

### ii. *Fair Use*

Fair use "is a statutory affirmative defense to a claim of copyright infringement." *Thornton v. J Jargon Co.*, 580 F.Supp.2d 1261, 1283 (M.D. Fla. 2008) (citing *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 590, 114 S.Ct. 1164, 127 L.E.2d 500 (1994)). "In determining whether a challenged use constitutes fair use, the Court considers several factors, including: (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the

effect of the use upon the potential market for or value of the copyrighted work." *Id.* at 1283-1284. (citing 17 U.S.C. §107 & *Campbell*, 510 U.S. at 576-77, 114 S.Ct. 1164). "The statute lists several fair uses, including criticism, comment, news reporting, teaching . . . scholarship, or research." *Id.* at 1184 (citing *Suntrust Bank v. Houghton Mifflin Co.*, 268 F.3d 1257, 1267 (11th Cir. 2001)). "Fair use analysis must always be tailored to the individual case." *Id.* (citing *Harper & Row Publishers, Inc. v. Nation Enter.*, 471 U.S. 539, 552-53, 105 S.Ct. 2218, 85 L.Ed.2d 588 (1985)). The fair use defense does not apply because Defendants' infringing content does not fall within the type of protected comment or criticism, and Defendants' infringing content demonstrates an intent to harm BCR by representing the content of BCR's copyrighted material.

      *iii.* _License_

"[T]ransfer of an exclusive license to a work must be in writing," but nonexclusive licenses need not be in writing and "may be granted orally, or may even be implied from conduct." *Thornton v. J Jargon Co.*, 580 F.Supp.2d 1261, 1281 (M.D. Fla. 2008) (citing 17 U.S.C. §§101 & 204 and *Jacob Maxwell, Inc. v. Veeck*, 110 F.3d 749, 752 (11th Cir. 1997)). "An implied license is created only in narrow circumstances, however, when: (1) a person (the licensee) requests the creation of a work, (2) the creator (the licensor) makes that particular work and delivers it to the licensee who requested it, and (3) the licensor intends that the licensee copy and distribute his work." *Id.* (citing *Nelson-Salabes, Inc. v. Morningside Dev., LLC*, 284 F.3d 505, 514 (4th Cir. 2002) and *Effects Assocs., Inc. v. Cohen*, 908 F.2d 555, 558-59 (9th Cir. 1990)). "It is Defendants' burden to prove the existence of an implied license." *Id.* (citing *Bourne v. Walt Disney Co.*, 68 F.3d 621, 631 (2d Cir. 1995)). Defendants have no evidence supporting the existence of a valid license.

### D. <u>Elements of a Cause of Action for Misrepresentation under the DMCA</u>

"In 1998, Congress adopted the DMCA [Digital Millennium Copyright Act], 17 U.S.C. §512, in part to address copyright concerns with user-driven media, such as the YouTube internet website." *Shropshire v. Canning*, 809 F.Supp.2d 1139, 1147 (N.D. Cal. 2011). "Section 512(c) lays out a detailed process allowing a copyright owner who observes infringing content on a website like YouTube to have the content taken down." *Id.* "The copyright owner must send a notification to YouTube ('takedown notice') identifying the offending video and asserting under penalty of perjury that the sender is the copyright owner and has a good faith belief that the video infringes the sender's copyrights." *Id.* (citing 17 U.S.C. §512(c)(3)). "YouTube, in order to retain its 'safe harbor,' then must remove the material from its servers or face infringement liability itself." *Id.* (citing 17 U.S.C. §512(c)(1)(C)).

The "misrepresentation provision" of the DMCA, 17 U.S.C. §512(f), provides that "[a]ny person who knowingly materially misrepresents under this section . . . that material or activity was removed or disabled by mistake or misidentification, shall be liable for any damages, including costs and attorneys fees, incurred . . . by any copyright owner or copyright owner's authorized licensee . . . who is injured by such misrepresentation, as the result of the service provider relying upon such misrepresentation . . . in replacing the removed material or ceasing to disable access to it." *See also, Shropshire* at 1147-48 ("Any person who makes a willful misrepresentation in a DMCA counter-notice may be liable for damages to an injured copyright owner if, as a result of the service provider relying upon such misrepresentation, the misrepresentation causes injury to the copyright owner.").

## V. **ARGUMENT**

### A. **Defendants are liable for willful copyright infringement.**

#### i. *BCR has a valid copyright.*

BCR holds a federally registered copyright in its copyrighted material; even pre-registration, BCR displayed its copyrighted material, reserving all of its rights. *See,* Ex. A at 17:9-10, 27:15-25, & 33:5-13. Defendants have not challenged BCR's copyright.

#### ii. *Defendants have copied BCR's copyrighted material.*

Defendants have admitted to using BCR's copyrighted material, and BCR has documented dozens of different unauthorized uses on YouTube, Facebook, Carole1Baskin.wordpress.com, Buzznet, Animalsluts.org, Vimeo, Traditional Circus Life, 911animalabuse.org, Blogspot, JoeExotic.com, Liveleak, and Videos.com.    BCR has documented uncontroverted uses of its copyrighted material by Defendants pre-registration and pre-filing of this lawsuit, as well as post-registration and post-filing of this lawsuit.  It is not a question that Defendants have copied BCR's copyrighted material, only how many times they have copied it.[28]

#### iii. *Defendants' conduct was willful.*

This Court can determine willful copyright infringement, and award appropriate statutory damages, on summary judgment. *See, e.g., Cable/Home Communication Corp. v. Network Productions, Inc.,* 902 F.2d 829 (11th Cir. 1990) (affirming a grant of summary judgment finding willful copyright infringement and imposing statutory damages).

---

[28]    Even with respect to the "disputed" uses of BCR's copyrighted material, the evidence is so one-sided – BCR's summary judgment is supported by reliable declarations and documents obtained from unbiased non-parties while Defendants will at best be able to come forward with an unsupported, contradictory affidavit or declaration – that summary judgment is appropriate.

"'Willfully,' in the context of section 504(c)(2), means that the defendant 'knows his actions constitute an infringement; the actions need not have been malicious.'" *Cable/Home Communication Corp.* at 851 (citations omitted). "Furthermore, when the infringement is willful, deterrence of future violations is a legitimate consideration because defendants must not be able to sneer in the face of copyright owners and copyright laws." *Id.* "In its broad discretion for determining statutory damages, the district court should consider both the willfulness of the defendant's conduct and the deterrent value of the sanction imposed." *Id.* at 852.

In determining Defendants' willfulness, this Court should first consider the timing of the alleged copyright infringement: after BCR sued Defendants for trademark infringement. Defendants were aware of copyright issues when they uploaded the infringing content on various websites[29], but they uploaded the content anyway. Some of Defendants' infringing content begins with the statement that "nothing in this video is copyrighted." Defendants received DMCA takedown notices, which again put Defendants on notice of potential copyright infringement; undaunted, Defendants submitted false DMCA counter-notifications, under penalty of perjury. Defendants continued to upload infringing content after BCR's copyright registration issued and after BCR sued Defendants for copyright infringement. Post-registration and post-filing of this lawsuit, Defendants took no action to disable access to infringing content. Moreover, Defendants submitted false responses to BCR's First Request for Admissions and offered false deposition testimony to attempt to cover their tracks. BCR was forced to issue subpoenas to non-party Internet content and service providers to uncover the truth. Moreover, Defendants' infringing activity has not ceased with the filing of this lawsuit; Defendants created a new YouTube user name and uploaded infringing content as late as August 29, 2012.

---

[29]    Internet content providers like YouTube, Vimeo, and Liveleak, require their users to agree to abide by their Terms of Use, which expressly identify copyright issues and prohibit copyright infringement. (Ex. J at ¶¶26-36).

Defendants' infringing activity is not one, isolated Internet post. Defendants' infringing activity is a calculated, systematic effort to upload infringing content literally anywhere possible.

iv. *No defenses apply.*

Defendants bear the burden of proving their affirmative defenses. The defenses of estoppel and unclean hands also do not apply because there are no facts or record evidence supporting those defenses. Any license defense must fail because Defendants' fifth interrogatory response contends that Ginny Valdalez gave Defendants permission to use BCR's copyrighted material, even though Defendants have no supporting documents, they have not listed her as a trial witness, and she had no authority to grant such permission. Finally, the fair use defense also does not apply because Defendants' infringing activity was a calculated effort to damage BCR and misrepresent the content of the copyrighted material, not to offer protected comment or criticism.[30]

**B.  Defendants are liable for misrepresentations under the DMCA.**

As discussed above, Defendants were aware of copyright issues by the Internet content providers' terms of use, by the DMCA takedown notices themselves, and by the statement by Defendants in their own videos that nothing within the video is copyrighted.

Defendants' counter-notifications all state that the infringing content was removed by mistake or misidentification. Defendants have known of BCR since well before the infringing use began, and they knew that their infringing content featured a BCR photograph. When Defendants received a DMCA takedown notice, they knew that it related to content misappropriated from BCR. Accordingly, the statements that the content was removed by

---

[30]      Considering the titles of Defendants' infringing content discussed above – "Save the rabbits from BCR," "Saga 36 Carole Baskins staff kills animals," "Big Cat Rescue Killing Innocent Bunnies for Entertainment," and "Big Cat Rescue kills Bunnies" – Defendants intent was clearly to infringe BCR's copyright and harm BCR rather than offer any productive comment or criticism.

mistake or misidentification are patently false, demonstrate total disregard for the perjury provisions of the DMCA, and ultimately caused this litigation.

### C. Remedy

In light of the foregoing, this Court should impose the maximum available statutory damages for Defendants' willful copyright infringement – $150,000[31] – which amounts to $6,250 for each of the twenty-four (24) infringing uses by Defendants after the filing of this lawsuit.[32] Additionally, this Court should enjoin Defendants' use of BCR's copyrighted material (or any copyrighted content on BCR's website), order Defendants to recall all unauthorized uses, and order Defendants to pay BCR's costs and fees incurred in prosecuting this action for copyright infringement and misrepresentation under the DMCA, in an amount to be determined by this Court after entry of summary judgment.[33]

## VI.   CONCLUSION

For the foregoing reasons, this Court should enter summary judgment against Defendants and in BCR's favor, and grant such further relief as it deems appropriate.

---

[31]     In *Ordonez-Dawes v. Turnkey Properties, Inc.*, 2008 WL 1840716 (S.D. Fla. Apr. 22, 2008), for example, the Court awarded the maximum available statutory damages for willful copyright infringement relating to a photograph.

[32]     17 U.S.C. §504(c)(1)-(2) allows for the imposition of statutory damages "for all infringements involved in the action, with respect to any one work." BCR believes that it is entitled to statutory damages for each of Defendants' infringing uses after the registration of the copyrighted material and filing of this lawsuit. Rather than "undertake the charade of filing separate actions (based upon separate infringing transactions) in order to achieve multiple statutory damages," this Court could conclude, as suggested by *Nimmer on Copyright*, that "in the interest of judicial economy, multiple minimum recoveries may be awarded in a single action in such circumstances, provided each such recovery is for a separate infringing transaction." M. Nimmer & D. Nimmer, Nimmer on Copyright §14.04[E][2][c] (2012).

[33]     BCR will also file a motion for recovery of its costs and fees incurred in disproving Defendants' false denials in response to BCR's First Request for Admissions, pursuant to Rule 37(c)(2), Fed. R. Civ. P.

Respectfully submitted,

*/s/ Frank R. Jakes*_____
FRANK R. JAKES, FBN 372226
E-Mail:  frankj@jpfirm.com
ALEKSAS A. BARAUSKAS, FBN 0068175
E-Mail:  aleksasb@jpfirm.com
JOHNSON, POPE, BOKOR, RUPPEL
 & BURNS, LLP
403 E. Madison Street, 4th Floor
Tampa, FL  33602
Tel:  (813) 225-2500
Fax:  (813) 223-7118

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on October 12, 2012, I filed the foregoing using the CM/ECF electronic filing system, which will serve a copy of the foregoing on all counsel of record, including the following counsel:

Tracy M. Henry, Esq.
Anderson Law Group, P.A.
13577 Feather Sound Drive
Suite 670
Clearwater, Florida 33762
Telephone: (727)329-1999;Fax:(727)329-1499
Attorneys for Defendants

*/s/ Frank R. Jakes*_____
FRANK R. JAKES, FBN 372226
E-Mail:  frankj@jpfirm.com
ALEKSAS A. BARAUSKAS, FBN 0068175
E-Mail:  aleksasb@jpfirm.com
JOHNSON, POPE, BOKOR, RUPPEL
 & BURNS, LLP
403 E. Madison Street, 4th Floor
Tampa, FL  33602
Tel:  (813) 225-2500
Fax:  (813) 223-7118

1062676v.2