UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**BIG CAT RESCUE CORP.,**

      **Plaintiff,**

**vs.**                            **Case No.: 8:11-cv-02014-JDW-TBM**

**BIG CAT RESCUE ENTERTAINMENT
GROUP, INC. et al.,**

      **Defendants.**

_____/

## ORDER

**BEFORE THE COURT** is Plaintiff's Motion for Summary Judgment (Dkt. 42), to which

Defendants have responded (Dkt. 48). Upon consideration, the Motion is GRANTED *in part* and

DENIED *in part*.

**I.**     **FACTUAL AND PROCEDURAL BACKGROUND**

This is a lawsuit for copyright infringement of a photograph. The photograph was taken on

April 25, 2010, by Julie Hanan, who assigned ownership to Plaintiff Big Cat Rescue Corporation.

(*See* Dkts. 32-2, 32-3.) Plaintiff registered the photograph and holds a valid copyright as of August

25, 2011. (Dkt. 32-3.)

Plaintiff alleges that Defendants Joe Schriebvogel ("Schriebvogel"), Big Cat Rescue

Entertainment Group, Inc. ("BCRE"), and G.W. Exotic Memorial Animal Foundation ("GW

Exotic") obtained the photograph in mid-2011 (before registration) and began distributing it on the

Internet. (*See* Dkt. 32; Dkt. 42 at 2.) After discovering the reproductions, Plaintiff provided

notifications of Defendants' activity under the Digital Millennium Copyright Act ("DMCA"), 17

1

U.S.C. § 512, which prompted service providers to remove the photograph or videos containing the photograph. (*See, e.g.*, Dkts. 24, 29, 43.) Defendants provided counter notifications in response to YouTube's removal of some videos, asserting under penalty of perjury that they were removed in error.[1] (*See, e.g.*, Dkt. 42-14 at 2-3, 15.)

Plaintiff filed suit on September 2, 2011 (Dkt. 1), and Defendants waived service on October 27, 2011 (Dkt. 6). On September 7, 2012, Plaintiff was granted leave to file a Supplemental Amended Complaint (Dkt. 31) to add alleged instances of copyright infringement, which was filed on September 8, 2012 (Dkt. 32).[2]

Count I of the Supplemental Amended Complaint seeks relief under 17 U.S.C. §§ 501-505 for willful copyright infringement. (*See* Dkt. 32 ¶¶ 64-74.) Count II alleges that Defendants made false statements in the counter-notifications to YouTube in violation of the DMCA, 17 U.S.C. § 512(f). (*See* Dkt. 32 ¶¶ 75-78.) In their Amended Answer to the initial Complaint (Dkt. 22), Defendants deny the claims and assert six "affirmative defenses": (1) failure to state a claim on which relief may be granted; (2) estoppel; (3) fair use; (4) misuse of copyright or unclean hands; (5) the harm was caused by parties not joined in this case; and (6) the harm was incurred as a result of others beyond the control of Defendants. (Dkt. 22 at 6-7.)

## II.   STANDARD

---

[1]In response to the DMCA notifications by the service providers, Defendants responded with the following statement:

> I swear, under penalty of perjury, that I have a good faith belief the material was removed due to a mistake or misidentification of the material to be removed or disabled.

> Joseph Schriebvogel

(Dkt. 42-14 at 2-3, 15.)

[2]Defendants have not filed an answer or other responsive pleading to the Supplemental Amended Complaint. Their last responsive pleading was an Amended Answer and Affirmative Defenses to the initial Complaint (Dkt. 22).

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine factual dispute exists only if a reasonable fact-finder 'could find by a preponderance of the evidence that the [non-movant] is entitled to a verdict.'" *Kernel Records Oy v. Mosley*, 694 F.3d 1294, 1300 (11th Cir. 2012) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). A fact is material if it may affect the outcome of the suit under the governing law. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine disputes of material fact that should be decided at trial. *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1260 (11th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If the moving party fails to demonstrate the absence of a genuine dispute, the motion should be denied. *Kernel Records*, 694 F.3d at 1300 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 606-08 (11th Cir. 1991)). Once the movant adequately supports its motion, the burden shifts to the nonmoving party to show that specific facts exist that raise a genuine issue for trial. *Dietz v. Smithkline Beecham Corp.*, 598 F.3d 812, 815 (11th Cir. 2010). The nonmoving party must "go beyond the pleadings," and designate specific facts showing that there is a genuine dispute. *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593-94 (11th Cir. 1995) (citing *Celotex*, 477 U.S. at 324). The district court need not "parse a summary judgment record to search out facts or evidence not brought to the court's attention." *Atlanta Gas Light Co. v. UGI Utilities, Inc.*, 463 F.3d 1201, 1208 n.11 (11th Cir. 2006). A mere scintilla of evidence in the form of conclusory allegations, legal conclusions, or evidence that is merely colorable or not significantly probative of a disputed fact cannot satisfy a party's burden.

3

*Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1991); *Kernel Records*, 694 F.3d at 1301.

The evidence presented must be viewed in the light most favorable to the nonmoving party. *Ross v. Jefferson Cnty. Dep't of Health*, 695 F.3d 1183, 1185 (11th Cir. 2012). If there is a conflict between the parties' allegations or evidence, the nonmoving party's evidence is presumed to be true. *Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1164 (11th Cir. 2003). "Although all justifiable inferences are to be drawn in favor of the nonmoving party," *Baldwin Cnty v. Purcell*, 971 F.2d 1558, 1563-64 (11th Cir. 1992), "inferences based upon speculation are not reasonable." *Marshall v. City of Cape Coral*, 797 F.2d 1555, 1559 (11th Cir. 1986). If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine dispute over a material fact, the court should not grant summary judgment. *Samples ex rel. Samples v. City of Atlanta*, 846 F.2d 1328, 1330 (11th Cir. 1998). However, if the nonmovant's response consists of nothing "more than a repetition of his conclusory allegations," summary judgment is not only proper, but required. *Morris v. Ross*, 663 F.2d 1032, 1034 (11th Cir. 1981).

## III.   ANALYSIS

### A.   <u>Count I - Copyright Infringement</u>

Copyright protection inures in "original works of authorship fixed in any tangible medium of expression," including photographs. 17 U.S.C. §§ 102(a), 102(a)(5). Generally, the owner of a copyright has the exclusive rights to distribute or display the copyrighted work to the public. 17 U.S.C. §§ 106(2), 106(5). The initial ownership of a copyrighted work vests in the author of the work. 17 U.S.C. § 201(a). This ownership may be transferred "by any means of conveyance or by operation of law." 17 U.S.C. § 201(d).

To establish copyright infringement, two elements must be shown: "(1) ownership of a valid

copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991). "[R]egistration is not a condition of copyright protection." 17 U.S.C. § 408(a). Rather, copyright protection inures at "the moment an original idea leaves the mind and finds expression in a tangible medium, be it words on a page, images on a screen, or paint on a canvas." *Kernel Records*, 694 F.3d at 1301 (quoting *La Resolana Architects, PA v. Clay Realtors Angel Fire*, 416 F.3d 1195, 1198 (10th Cir. 2005), *abrogated in part by Reed Elsevier, Inc. v. Muchnick*, 130 S.Ct. 1237 (2010)). Registration is, however, a prerequisite to an infringement action, but it may be obtained at any time during the copyright term. 17 U.S.C. §§ 408(a), 411(a); *see Hagendorf v. Brown*, 699 F.2d 478, 480 (9th Cir. 1983).

It is undisputed that Plaintiff (1) owns a valid and properly registered copyright in the photograph, and (2) the alleged infringing posts copied constituent elements of the content that are original. Defendants, however, deny reproducing the photograph and claim that various defenses protect any use that may have occurred. Each allegedly infringing reproduction must be evaluated to determine whether genuine disputes exist as to Defendants' responsibility for the use.

### 1.   *Facebook Post 1*

On May 19, 2011, Schriebvogel posted the photograph on his personal account on the website Facebook.[3] (*See* Dkt. 42-3 ¶ 8; Dkt. 42-3 at 12-14.) Defendants do not dispute that this Facebook account belonged to, and was controlled by, Schriebvogel, nor do they dispute that Schriebvogel posted the photograph. In fact, Defendants concede that "they used the photograph before it was registered and before this lawsuit was filed." (Dkt. 48 at 2.)

---

[3]Schriebvogel posted the content under his personal Facebook account for "Joe A. Schriebvogel" in an album of photos titled "May 19, 2011." (Dkt. 42-3 at 12-14.) As a result, the picture was available at multiple URLs on the Facebook website, including http://www.facebook.com/joe.a.schriebvogel/photos, and the others listed in Exhibit C-1.

2.    *YouTube Videos by "gwbigcatdaddy" - Set 1*

On June 27, 2011, the user "gwbigcatdaddy" posted three videos on YouTube entitled "Saga 36 Carole Baskins staff kills animals," "Big Cat Rescue Saga 42 part 2 the real truth," and "Big Cat Rescue Saga 42 part 3 the real truth," all of which contained the photograph.[4] (*See* Dkt. 42-3 ¶ 9; Dkt. 42-3 at 15-16, 18, 20). Defendants admit that Schriebvogel posted videos on YouTube under the user name "gwbigcatdaddy." (Dkt. 42-14 at 4.)

3.    *YouTube Videos by "bigcatbullshit" - Set 1*

On August 2, 2011, the user "bigcatbullshit" posted a video on YouTube entitled "Big Cat Rescue's Double Standards.wmv" containing the photograph.[5] (Dkt. 42-3 ¶ 10; Dkt. 42-3 at 26.) Defendants deny responsibility for the "bigcatbullshit" user name and deny posting the video. (Dkt. 42-14 at 19-20.)

The individual responsible for the account with the user name "bigcatbullshit" used the email address littlerickyexotic@yahoo.com, from the IP address 198.228.197.158, in Wynnewood, Oklahoma. That individual was born on March 5, 1963. (Dkt. 42-16 ¶¶ 15, 17; Dkt. 42-21 at 6.) Although Defendants access the Internet in Wynnewood (Dkt. 42-15 at 16), Plaintiff does not point to any evidence that Defendants use the email address littlerickyexotic@yahoo.com or the IP address 198.228.197.158, or that Schriebvogel was born on March 5, 1963.[6] Therefore, a genuine dispute

---

[4]The videos were available at http://www.youtube.com/watch?v=4vfv7jA3rYo, http://www.youtube.com/watch?v=BBKTdFGJcxE&feature=mr_meh&list=PL2931907C82215, and http://www.youtube.com/watch?v=BBKTdFGJcxE&feature=mr_meh&list=PL2931907C82215AD6&index=4&playnext=0, respectively.

[5]The video was available at http://www.youtube.com/watch?v=r8e3rt2S3dA.

[6]Plaintiff argues that the email address "matches the name of Schriebvogel's pet monkey for which Schriebvogel maintains a Facebook account." (Dkt. 42 at 8 n.11.) Without more, however, this allegation is insufficient to resolve the dispute as to whether any of the Defendants control or use the email address. Plaintiff also states that Schriebvogel was born on March 5, 1963. (*Id.*) Plaintiff, however, has not pointed to any pleading, document, or evidence showing when Schriebvogel was born, or that the date of birth used to register the user name is genuine.

of material fact exists as to whether Defendants control the YouTube user name "bigcatbullshit."

### 4.    *Vimeo Videos by "Joe Exotic" - Set 1*

On August 6, 2011, the user "Joe Exotic" posted two videos on Vimeo entitled "Big Cat Rescue Killing Innocent Bunnies for entertainment" and "Big Cat Rescue and the lies to cover up," both of which contained the photograph.[7] (Dkt. 42-3 ¶ 11; Dkt. 42-4 at 1, 4; Dkt. 42-23 at 1-2.)

Defendants deny responsibility for the "Joe Exotic" user name. (*See* Dkt. 42 at 8 n.12; Dkt. 42-15 at 6-7.) This denial, however, is contradicted by Schriebvogel's deposition testimony, in which he admits to controlling the "Joe Exotic" account. (Dkt. 42-2 at 77:9-12, 95:17-19.) Plaintiff also presented evidence associating "Joe Exotic" with the email address joe_exotic@yahoo.com and the IP address 50.30.99.173.[8] (*See* Dkt. 42-17 at 5, 9; Dkt. 42-19 at 49.) Schriebvogel testified that he uses that email address (Dkt. 42-2 at 90:21-25), and Defendants admit they are the registered users of that IP address (Dkt. 42-15 at 15). Considering this undisputed evidence, there is no genuine dispute that Schriebvogel had control of the "Joe Exotic" account and posted the video. *See Kernel Records*, 694 F.3d at 1300 ("A genuine factual dispute exists only if a reasonable fact-finder 'could find by a preponderance of the evidence that the [non-movant] is entitled to a verdict.'").

### 5.    *YouTube Videos by "gwbigcatdaddy" - Set 2*

On August 22 and 23, 2011, the user "gwbigcatdaddy" uploaded two videos to YouTube

---

[7] The videos were available at http://www.vimeo.com/27377951, and http://www.vimeo.com/27376397.

[8] The "user ID" associated with the "Joe Exotic" user name is 8027564. (Dkt. 42-17 at 5.) The account associated with the user ID 8027564 was accessed on August 13, 2011 from the IP address 50.30.99.173 (Dkt. 42-17 at 9). And the "Joe Exotic" user name emailed Vimeo support staff from the joe_exotic@yahoo.com email address to complain that "Carole Baskin with Big Cat Rescue has filed many False claims to the stories and content *that I have done*." (Dkt. 42-19 at 49 (emphasis adeed).)

entitled "Carole Baskin Saga 39," and "Save the rabbits from BCR,"[9] which contained the photograph. (Dkt. 42-3 ¶ 12; Dkt. 42-4 at 5.) Schriebvogel admitted to posting both videos to YouTube. (*See* Dkt. 42-2 at 60:15-23[10]; Dkt. 42-4 at 5; Dkt. 42-14 at 1.)

### 6.    *Capwiz.com*

Plaintiff's Motion alleges that Defendants uploaded infringing content on two web pages hosted by capwiz.com,[11] but Plaintiff has not presented any evidence that the photograph was uploaded by any of the Defendants. The screen shots in evidence have a background that appears to belong to GW Exotic (*see* Dkt. 42-4 at 8), but Plaintiff does not argue, nor can the inference properly be drawn, that this background eliminates any dispute as to whether Defendants posted the photograph to this website.

### 7.    *Liveleak.com*

On August 26, 2011, the user "Joe Exotic" uploaded to the website Liveleak.com a video entitled "Big Cat Rescue, living double standards," which contained the photograph.[12] (Dkt. 42-3 ¶ 14; Dkt. 42-4 at 9-10.) Although record evidence demonstrates that the video was uploaded from the IP address 50.30.99.173 (Dkt. 42-16 ¶ 7-8; Dkt. 42-16 at 39), which Defendants control (Dkt. 42-15

---

[9]The videos were available at http://www.youtube.com/watch?v=4j07xiU_zss, and http://www.youtube.com/watch?v=MFavfrgWMky.

[10]

| Q. | Do you recognize the Saga 39, "Killing Innocent Rabbits"? |
| A. | **Could be.** |
| Q. | Could that be one of the videos you posted on YouTube? |
| A. | **Could be.** |
| Q. | Okay. And that's one of the videos that incorporated the photograph which is Exhibit 1. Correct? |
| A. | **Yes.** |

[11]http://capwiz.com/gwpark/issues/alert/?alertid=52249501 and http://capwiz.com/gwpark/issues/alert/?alertid=52248511.

[12]The video was available at http://www.liveleak.com/view?i=3e71314369215.

8

at 15), Defendants deny responsibility for the user name and for posting the video. (Dkt. 42-14 at 19; Dkt. 42-15 at 7.) Plaintiffs have not pointed to any other evidence that directly contradicts these denials, so an inference must be drawn that even though Defendants are the "registered users" of the IP address, an individual unassociated with Defendants could have posted the content from a computer utilizing the IP address.[13] Therefore, a genuine dispute exists as to whether Defendants posted the content on Liveleak under the user name "Joe Exotic" in the video "Big Cat Rescue, living double standards."

### 8.   Videos.com

There is a genuine dispute of material fact as to whether Defendants posted the video "Big Cat Rescue, living double standards" on August 27, 2011, which contained the content, on Videos.com, for the same reasons there is a genuine dispute as to whether Defendants posted the video on Liveleak.

### 9.   YouTube Videos by "suebass2011" - Set 1

From August 28, 2011 to September 4, 2011, the user "suebass2011" uploaded five videos to YouTube containing the photograph.[14] (See Dkt. 42-3 ¶¶ 15, 16; Dkt. 42-4 at 14-19.) Defendants deny responsibility for this user name and for posting the videos (Dkt. 42-15 at 16), and Schriebvogel testified that he is not responsible for the account. (Dkt. 42-2 at 67:7-71:1.) Plaintiff

---

[13]See generally In re BitTorrent Adult Film Copyright Infringement Cases, Civil Action Nos. 11-3995(DRH)(GRB), 12-1147(JS)(GRB), 12-1150(LDW)(GRB), 12-1154(ADS)(GRB), 2012 WL 1570765, at *3 (E.D.N.Y. May 1, 2012) ("[T]he assumption that the person who pays for Internet access at a given location is the same individual who allegedly downloaded a single sexually explicit film is tenuous, and one that has grown more so over time. An IP address provides only the location at which one of any number of computer devices may be deployed, much like a telephone number can be used for any number of telephones. . . . Thus, it is no more likely that the subscriber to an IP address carried out a particular computer function . . . than to say an individual who pays the telephone bill made a specific telephone call.").

[14]The videos were titled "Just what is Big Cat Rescue," "Big Cat Rescue Animal Lovers.wmv," "Carole Baskin Saga 41 Busted," "Saga 45 Carole smuggles Bobcat Kittens," and "Carole Baskin Saga 48 The Contract."

has presented evidence showing that the user name "suebass2011" is associated with the e-mail address suebass2011@gmail.com, and the date of birth the user entered when registering the user name is March 5, 1963.[15] (Dkt. 42-21 at 8.) Discovery also revealed that the secondary e-mail address associated with the user name is joe_exotic@yahoo.com, which belongs to Schriebvogel. Despite the link between the e-mail address and Schriebvogel, Plaintiff has not overcome its initial burden to demonstrate that there is no genuine dispute of material fact as to whether Defendants posted videos on YouTube under the user name "suebass2011." Taking all inferences in favor of Defendants, the circumstantial evidence of an unconfirmed date of birth in the same astrological sign and a secondary e-mail address belonging to Schriebvogel does not eliminate all disputes of material fact, especially in light of Schriebvogel's deposition testimony denying responsibility.

### 10.    *Traditional Circus Life Post 1*

On September 6, 2011, a video entitled "Jeff Kramer of Big Cat Rescue of Tampa.wmv," which contained the photograph, was uploaded to the website "Traditional Circus Life." (Dkt. 42-3 ¶ 17; Dkt. 42-5 at 1.) Plaintiff does not identify the evidence supporting the conclusion that Defendants were responsible for creating or uploading this video. Because the district court is not required to "parse the record" to locate evidence, Plaintiff has not met its burden.

### 11.    *Facebook Post 2*

On September 13, 2011, the photograph was posted on the Facebook page titled "Joe Exotic Fan Page." (Dkt. 42-5 at 2.) Defendants admit that Schriebvogel created and used the Joe Exotic Fan Page. (Dkt. 42-15 at 3.) This admission is sufficient to overcome Plaintiff's initial burden of

---

[15]Plaintiff argues that Schriebvogel's testimony that he is a Pisces confirms that he created this user name with his own personal information. That evidence, however, does not eliminate disputes of fact, particularly given the fact that Plaintiff has failed to provide evidence demonstrating Schriebvogel's date of birth.

demonstrating that no genuine disputes of material fact exist. Defendants have not addressed this post in their response and present no evidence demonstrating that a dispute exists as to whether Schriebvogel created the post and uploaded the content to Facebook.

### 12.    Wordpress

Defendants admit that Schriebvogel posted the photograph on six web pages hosted by "Wordpress" around September 28, 2011.[16] (*See* Dkt. 42-5 at 4-6, 8-10; Dkt. 42-15 at 3, 7-9.)

### 13.    Animalsluts.org

Defendants admit that Schriebvogel posted the photograph on the website animalsluts.org during October 2011.[17] (Dkt. 42-5 at 13; Dkt. 42-15 at 6-7; Dkt. 58 at 7.)

### 14.    Buzznet

In October 2011, the photograph was posted on the "joeexotic" user page of buzznet.com.[18] (Dkt. 42-5 at 14.) The evidence shows that the user "joeexotic" lives in Wynnewood, Oklahoma, is male, is a Pisces, and lists http://www.911animalabuse.org as a related website – all characteristics shared by Schriebvogel. (*See* Dkt. 42-5 at 14.) Plaintiff further argues that Defendants must be

---

[16]The content was posted on the following URLs hosted by Wordpress:

1.    http://carole1baskin.wordpress.com
2.    http://carole1baskin.wordpress.com/bcr-staff/
3.    http://carole1baskin.wordpress.com/the-truth
4.    http://carole1baskin.files.wordpress.com/2011/09/bcr-rabbit-blog.jpg
5.    http://carole1baskin.wordpress.com/double-standards
6.    http://carole1baskin.files.wordpress.com/2011/09/orig-1428743.jpg

Although Plaintiff does not present a screen shot of the content hosted on the URL http://carole1baskin.wordpress.com/bcr-staff/, Defendants admit that Schriebvogel posted the content on this particular URL. (*See* Dkt. 42-15 at 3.)

[17]Defendants' argument in their response to the Motion for Summary Judgment that Schriebvogel "was not sure the photograph was put on animalsluts.com" is not supported by the cited deposition testimony, and is contradicted by every other piece of evidence submitted by Plaintiff, as well as testimony given by Schriebvogel.

[18]The content was available at http://joeexotic.buzznet.com/user/video/4912741/carole-baskin-saga-48-contract.

responsible for this page because the "Joe Exotic" user name is frequently used by Defendants, and because the video is titled "Carole Baskin Saga 48," and Schriebvogel testified to making 57 "sagas" about Carole Baskin. In his deposition, however, Schriebvogel testified that he has never heard of "joeexotic" on Buzznet and that he did not put the photograph on Buzznet. (Dkt. 42-2 at 49:8-20.) Although the evidence implicates Schriebvogel, especially the listing of 911animalabuse.org, which Schriebvogel created (Dkt. 42-2 at 49:6-7, 53:18-21), his direct testimony denying that he posted the content prevents summary judgment. *See Price v. Time, Inc.*, 416 F.3d 1327, 1345 (11th Cir. 2005) ("Courts routinely and properly deny summary judgment on the basis of a party's sworn testimony even though it is self-serving.").

### 15.   *911animalabuse.org*

Schriebvogel admits he created 911animalabuse.org and posted the photograph to that website in October 2011.[19] (Dkt. 42-5 at 17; Dkt. 42-2 at 49:6-7, 53:18-25; Dkt. 58 at 7.)

### 16.   *Blogspot Post 1*

Also in October 2011, the photograph was uploaded on the website previously known as "Blogspot."[20] (Dkt. 42-6 at 1) Defendants deny responsibility for this web page. (Dkt. 42-2 at 55:5-12; Dkt. 42-14 at 12-13.) The only evidence presented by Plaintiff to associate Defendants with the post is the e-mail address associated with the content (suebass2011@gmail.com), which is insufficient to demonstrate the absence of genuine disputes of material fact.

---

[19]The photograph was available at http://www.911animalabuse.org/big-cat-rescue/bunnies-slaughtered-at-bigcatrescue-fl/. Defendants' argument in their response to the Motion for Summary Judgment that Schriebvogel "was not sure if he put the photograph on 911animalabuse.org" is not supported by the cited deposition testimony, and is contradicted by every other piece of evidence submitted by Plaintiff, as well as other testimony given by Schriebvogel.

[20]The photograph was available at http://bigcatrescuelies.blogspot.com/2011/06/subject-23-needless-slaughter-of.html, and was available as late as March 29, 2012. (*See* Dkt. 42-6 at 1; Dkt. 42-3 ¶ 23.)

### 17. *Traditional Circus Life Post 2*

Between October and December 2011, two more videos containing the photograph were posted to the Traditional Circus Life by the users "joeexotic" and "joeexotic (STAFF)."[21] (*See* Dkt. 42-7 at 1-7.) The first video contains the caption "Jeff Kramers bed time story 'By Joe Exotic.'" (Dkt. 42-7 at 4.) Defendants deny responsibility for these accounts. (Dkt. 42-15 at 4-5.) Schriebvogel's testimony, however, reveals that the "joeexotic" user name is controlled by Shawn Bailey, and that Bailey posted one video containing the photograph on the website "for" Schriebvogel, though it is unclear which one. (Dkt. 42-2 at 37:17-25.) There is, therefore, no genuine dispute of material fact that Schriebvogel created at least one video containing the photograph and directed Bailey to post it.

### 18. *Facebook Post 3*

In December 2011, the photograph was posted to the "Joe Exotic Fan Page" on Facebook. (Dkt. 42-7 at 8.) Defendants admit that Schriebvogel created the Joe Exotic Fan Page and was responsible for its content. (Dkt. 42-15 at 3.)

### 19. *Vimeo Videos - Set 2*

On December 7, 2011, the user "Joe Schriebvogel" posted an untitled video on Vimeo containing the photograph.[22] (Dkt. 42-7 at 9.) The user "Joe Schriebvogel" was established with the email address joeexotic@yahoo.com, which Schriebvogel admits he controls and uses. (Dkt 42-2

---

[21] Although Plaintiff's motion separates mentions of the videos into three instances, it appears that only two videos were posted, with the first posted twice and the second only once. The first video titled "Jeff Kramer (the bed time story)" was posted on the main page of traditionalcircuslife.co.uk as well as the URL http://traditionalcircuslife.co.uk/video/user/joeexotic. The second video was titled "Carole Baskin Saga 39 killing inocent rabbits," and was posted at the URL http://traditionalcircuslife.co.uk/video/007SKMN5G1Y3/Carole-Baskin-Saga-39-killing-inocent-rabbits.

[22] The video was available at http://vimeo.com/33346164.

at 90:21-25.) Evidence also demonstrates that the "Joe Schriebvogel" account was accessed through an IP address for which Defendants are the registered users.[23] (Dkt. 42-15 at 15.) This is sufficient to shift the burden to Defendants.

Defendants do not deny that Schriebvogel posted this video on Vimeo (Dkt. 42-14 at 7-8; *see* Dkt. 42-2 at 45:17-23), but they deny responsibility for the "Joe Schriebvogel" account. (Dkt. 42-15 at 8.) Despite some inconsistency,[24] Schriebvogel ultimately testified that he is not responsible for the "Joe Schriebvogel" account, creating a genuine dispute as to whether Schriebvogel or any of the Defendants posted the this video on Vimeo.

### 20.   Blogspot Post 2

In January 2012, the photograph was posted on Blogspot again.[25] (Dkt. 42-3 ¶ 27; Dkt. 42-7 at 11.) Defendants deny responsibility for this post (Dkt. 42-14 at 13; Dkt. 42-2 at 54:21-55:12), and Plaintiff has not presented any evidence demonstrating an absence of a dispute of material fact.

### 21.   JoeExotic.com

On March 21, 2012, the photograph was posted at http://www.joeexotic.com/staff.html. (Dkt. 42-3 ¶ 28; Dkt. 42-8 at 1.) The parties agree that Defendants uploaded infringing content on the website. (Dkt. 58 at 7.)

### 22.   YouTube Video by "Bigcatconspeircy"

---

[23]Vimeo's production reveals that the User ID 9555939 was accessed from the IP address 50.30.99.173. (Dkt. 42-17 at 27.) The ID 9555939 is associated with the "Joe Schriebvogel" account. (Dkt. 42-17 at 7.)

[24]*See, e.g.*, Dkt. 42-2 at 44:14-16 (when asked whether he agreed that the untitled video by "Joe Schriebvogel" was available as of March 29, 2012, Schriebvogel replied, "I don't buy that. . . . Because she had my account shut down last year."); Dkt. 45:13-46:1 (Schriebvogel fails to deny that he posted the video; instead, he demurs and states that he does not recall whether he posted it, even when given the opportunity to fully deny responsibility for posting the video); Dkt. 42-2 at 75:16-17, 77:9-12 (Schriebvogel testifies that he never used the "Joe Schriebvogel" or "Joe Exotic" accounts on Vimeo, but almost immediately thereafter testifies that he had a Vimeo account with the user name "Joe Exotic").

[25]The photograph was available at http://bigcatrescuelies.blogspot.com.

On August 27, 2012, the user "Bigcatconspeircy" uploaded to YouTube a video entitled "Big Cat Rescue Kills Bunnies," which contained the photograph.[26] (Dkt. 42-8 at 9.) Plaintiff presents evidence that the e-mail address associated with this user name is joeschriebvogel@gmail.com, which Defendants admit is under Schriebvogel's control. Defendants do not address this post or the user name "Bigcatconspeircy." There is no dispute that Schriebvogel uploaded this video.

## B.   Defenses to Copyright Infringement

As there is no dispute that Schriebvogel posted the photograph on the Internet twenty-one times, Plaintiff is entitled to judgment as a matter of law on the claim of copyright infringement absent an applicable defense. To that end, Plaintiff also seeks summary judgment on the defenses listed in Defendants' Amended Answer and Affirmative Defenses: (1) failure to state a claim; (2) estoppel due to unclean hands; (3) fair use; (4) misuse of copyright; (5) failure to join necessary parties; and (6) the harm was caused by others. (*See* Dkt. 22.) Defenses (1), (5), and (6) are not affirmative defenses. *See Leedom Mgmt. Group, Inc. v. Perlmutter*, No. 8:11-cv-2108-T-33TBM, 2012 WL 1883765, at *6-7 (M.D. Fla. May 22, 2012). Defense (2) is a combination of the affirmative defenses of estoppel and unclean hands, which will be addressed separately.

### 1.   Standard

On a plaintiff's motion for summary judgment, the defendant bears the initial burden of showing that an affirmative defense is applicable. *Int'l Schs. Servs., Inc. v. AAUG Ins. Co., Ltd.*, No. 10-62115-CIV, 2012 WL 5635590, at *8 (S.D. Fla. Nov. 15, 2012). The defendant "may not [simply] depend upon the mere allegations or defenses in his Answer to counter [a motion for summary judgment]." *Keybank Nat'l Ass'n v. Willoughby*, No. 2:09-cv-662-FtM-SPC, 2010 WL

---

[26]The video was available at http://www.youtube.com/watch?v=AAK7v86QDbU&feature=plcp.

3212086, at *3 (M.D. Fla. Aug. 12, 2010) (citing *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). The plaintiff may obtain summary judgment "simply by establishing the nonexistence of a genuine issue of material fact as to any essential element of a non-moving party's claim or affirmative defense." *Gomez v. Virtual Imaging Servs., Inc.*, No. 11-22068, 2012 WL 1933337, at *3 (S.D. Fla. Apr. 3, 2012) (citing *Celotex*, 477 U.S. at 324). This burden may be discharged by showing that there is an absence of evidence supporting the defense. *Id.*

### 2.    *Estoppel*

In copyright infringement cases, the infringer may assert the defense of estoppel by demonstrating "'(1) the copyright owner knew the facts of the infringement, (2) the copyright owner intended its conduct to be acted upon or the copyright owner acted such that the alleged infringer has a right to believe it was so intended, (3) the alleged infringer is ignorant of the true facts, and (4) the alleged infringer relies on the copyright owner's conduct to his detriment.'" *Thornton v. J Jargon Co.*, 580 F. Supp. 2d 1261, 1282 (M.D. Fla. 2008) (quoting *HGI Assocs., Inc. v. Wetmore Printing Co.*, 427 F.3d 867, 875 (11th Cir. 2005)).

Plaintiff argues correctly that there is no evidence supporting the defense of estoppel. Indeed, Defendants have not presented any evidence that Plaintiff knew about Schriebvogel's infringement, that Plaintiff intended Schriebvogel to act based on its conduct, that Schriebvogel is ignorant of the facts surrounding his infringements, or that Schriebvogel relied on Plaintiff's conduct to his own detriment. Plaintiff is therefore entitled to summary judgment on the affirmative defense of estoppel.

### 3.    *Unclean Hands*

To prevail on the defense of unclean hands, the infringer must demonstrate "(1) Plaintiff's alleged wrongdoing is directly related to the claim against which it is asserted; and (2) Defendants were personally injured by Plaintiff's conduct." *Thornton*, 580 F. Supp. 2d at 1283 (citing *Calloway*

*v. Partners Nat'l Health Plans*, 986 F.2d 446, 450-51 (11th Cir. 1993); *Mitchell Bros. Film Group v. Cinema Adult Theater*, 604 F.2d 852, 863 (5th Cir. 1979)). Defendants have likewise failed to develop any facts supporting the defense of unclean hands. There is no evidence in the record that Plaintiff committed any wrongdoing, or that Schriebvogel was harmed by any of Plaintiff's conduct. Plaintiff is therefore entitled to summary judgment on the affirmative defense of unclean hands.

### 4.    *Fair Use*

The fair use of a copyrighted work "for purposes such as criticism, news reporting, teaching . . ., scholarship, or research, is not an infringement of copyright." 17 U.S.C. § 107. In determining whether a certain use was fair, courts consider "(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work." *Id.* Fair use analysis "must always be tailored to the individual case." *Harper & Row Publishers, Inc. v. Nation Enter.*, 471 U.S. 539, 552-53 (1985). "Where material facts are not in dispute, fair use is appropriately decided on summary judgment." *Mattel, Inc. v. Walking Mountain Productions*, 353 F.3d 792, 800 (9th Cir. 2003) (citing *Harper & Row*, 471 U.S. at 560); *see Thornton*, 580 F. Supp. 2d at 1284. However, when material facts surrounding the defense remain in dispute, summary judgment is not appropriate.

Facts concerning the purpose, character, and frequency of Defendants' use of the photograph remain in dispute.[27] Summary judgment is therefore not appropriate.

---

[27]For example, the facts are not settled as to whether Schriebvogel's use of the photograph was commercial as opposed to non-profit, the degree to which Schriebvogel exploited the photograph for commercial gain, and the value, if any, of the copyrighted work. *See Harper & Row*, 471 U.S. at 562; *Elvis Presley Enters., Inc. v. Passport Video*, 349 F.3d 622, 627 (9th Cir. 2003).

### 5. *Misuse of Copyright*

The Eleventh Circuit has neither recognized nor rejected misuse as a defense for copyright infringement suits. *Telecom Tech. Servs. Inc. v. Rolm Co.*, 388 F.3d 820, 831 (11th Cir. 2004); *see Bellsouth Adver. & Publ'g Corp. v. Donnelley Info. Publ'g, Inc.*, 933 F.2d 952, 960-61 (11th Cir. 1991) (discussing misuse but refusing to extend its application to copyrights in that case), *vacated and rev'd* 999 F.2d 1436 (11th Cir. 1993). Its viability is of no moment, however, because Defendants have not adduced any facts suggesting that Plaintiff used its copyright "to secure an exclusive right or limited monopoly not granted by the [Copyright] Office and which it is contrary to public policy to grant." *Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772, 792 (5th Cir. 1999) (quoting *Lasercomb, Am. Inc. v. Reynolds*, 911 F.2d 970, 979 (4th Cir. 1990)). Even if copyright misuse is applicable to a broader set of circumstances beyond anti-competitive behavior,[28] Defendants have not presented any law or facts supporting such an extension, instead repeatedly stating in a conclusory fashion that Plaintiff misused its copyright.

Absent any argument that the defense of misuse of copyright should be adopted and any facts that Plaintiff misused its copyright, Defendants have not carried their burden to sustain the defense through trial. Plaintiff is entitled to summary judgment on the affirmative defense of misuse of copyright.

### 6. *License*

Finally, Plaintiff argues that any defense based on a license must fail. License is an affirmative defense to a claim for copyright infringement. *Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1235 (11th Cir. 2010). Plaintiff is entitled to summary judgment because license was never

---

[28]As suggested in *Home Design Servs., Inc. v. Hibiscus Homes of Fla., Inc.*, No. 6:03-cv-1860-ORL-19KRS, 2005 WL 3445522, at *11 (M.D. Fla. Dec. 14, 2005).

pled and is therefore waived. *See Troxler v. Owens-Ill., Inc.*, 717 F.2d 530, 532 (11th Cir. 1983) ("An affirmative defense not pleaded in the defendant's answer is waived."); *cf. Latimer*, 601 F.3d at 1240 (holding the "fair use" defense waived where not pled).

### C.    Count II - Digital Millennium Copyright Act Violation

Section 512, Title 17, of the United States Code lays out a detailed process allowing a copyright owner who observes infringing content on a website like YouTube to have the content taken down. *See Shropshire v. Canning*, 809 F. Supp. 2d 1139, 1147 (N.D. Cal. 2011). Under the statute, the copyright owner must send a written communication to the service provider identifying the offending video and asserting under penalty of perjury that the sender is the copyright owner and has a good faith belief that the video infringes the sender's copyright. *See* 17 U.S.C. § 512(c)(3); *Shropshire*, 809 F. Supp. 2d at 1147. Upon notification, the service provider is excepted from copyright liability if it removes or disables access to the content. *See* 17 U.S.C. §§ 512(c)(1)(C), 512(d)(3).

After the copyright owner submits the written notification to the service provider, and the service provider notifies the user of the allegedly infringing content, the user may submit a "counter notification" under the penalty of perjury "that the subscriber has a good faith belief that the material was removed or disabled as a result of mistake or misidentification of the material to be removed or disabled." 17 U.S.C. § 512(g)(3). Any person who "knowingly materially misrepresents" that the content "was removed or disabled by mistake or misidentification" is liable for any damages, including costs and attorneys' fees, incurred by the copyright owner or service provider. 17 U.S.C. § 512(f).

Plaintiff argues that Defendants submitted false counter-notifications under § 512(g)(3), and

that Defendants knew the counter-notifications were false when they were submitted. The evidence submitted by Plaintiff demonstrates that genuine disputes exist as to whether any of the Defendants "knowingly" misrepresented facts. Plaintiff, therefore, is not entitled to summary judgment on Count II.

CONCLUSION

There is no dispute that Plaintiff owns a valid copyright in the photograph and that Defendant Schriebvogel was responsible for copying the constituent parts of the photograph and posting it in videos and on websites twenty-one times. The parties agree that Schriebvogel undertook this conduct individually and on behalf of GW Exotic. (Dkt. 58 at 7.) Nevertheless, genuine disputes of material fact remain as to exactly how many times Schriebvogel posted the photograph, whether the use of the photograph wxas "fair," and whether Defendants knowingly misrepresented the status of Plaintiff's copyright in their DMCA counter-notifications. Accordingly,

1) Plaintiff's Motion for Summary Judgment (Dkt. 42) is GRANTED *in part* and DENIED *in part*.

2) Plaintiff is entitled to partial summary judgment establishing that Defendants Joe Schriebvogel and G.W. Exotic Memorial Animal Foundation reproduced the copyrighted photograph on the following occasions:

a. May 19, 2011, once on Schriebvogel's personal Facebook page;

b. June 27, 2011, in three videos uploaded on YouTube by the user "gwbigcatdaddy";

c. August 6, 2011, in two videos uploaded on Vimeo by the user "Joe Exotic";

d. August 22 and 23, 2011, in two videos uploaded on YouTube by the user "gwbigcatdaddy";

20

e. September 13, 2011, on the "Joe Exotic Fan Page" on Facebook;

f. September 28, 2011, on six web pages hosted by Wordpress;

g. During October 2011, once on animalsluts.org and 911animalabuse.org;

h. Between October and December 2011, once on traditionalcircuslife.co.uk;

i. During December 2011, once on the "Joe Exotic Fan Page" on Facebook;

j. On March 21, 2012, on joeexotic.com; and

k. August 27, 2012, in a video uploaded on YouTube by the user "Bigcatconspeircy."

3) Plaintiff is entitled to summary judgment on the affirmative defenses of estoppel, unclean hands, misuse of copyright, and license.

4) In all other respects, Plaintiff is not entitled to summary judgment.

**DONE AND ORDERED** in chambers this _15th_ day of January, 2013.

JAMES D. WHITTEMORE
United States District Judge

Copies to:
Counsel of Record